UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHVILLE DIVISION
DOCKET NO. 1:13-cv-284-GCM

| | |
|---|---|
| PHILLIP ANDERS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court upon the parties' cross Motions for Summary Judgement (Doc. Nos. 10 & 13). As ordered by the Court, the parties also filed supplemental briefs that addressed the recent Fourth Circuit decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (Doc. Nos. 16 & 17). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision which found him not disabled under the Social Security Act (the "Act").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the matter is REMANDED for further proceedings consistent with this opinion.

      **I.**      **PROCEDURAL AND FACTUAL BACKGROUND**

On January 21, 2011, Plaintiff Phillip Christopher Anders filed a Title II claim for a period of disability and disability insurance benefits with an alleged disability onset date of March 1, 2009. (Tr. 18, 165-75). Mr. Anders also filed a Title XVI application for supplemental security income on January 21, 2011. (Tr. 18). His applications were denied initially on March 17, 2011

1

and upon reconsideration on June 9, 2011. (Tr. 58-113, 116-40). Thereafter, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on March 16, 2012 before ALJ Michael J. Davenport. (Tr. 18). An impartial vocational expert ("VE") and the Plaintiff's attorney also appeared at the hearing. (*Id.*) In a decision dated April 18, 2012, ALJ Davenport denied the Plaintiff's applications for both disability and disability insurance benefits and supplementary security income benefits, ruling the Plaintiff was not disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (*Id.*) On August 22, 2013, the Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, rendering the Commissioner's decision final. (Tr. 1-6). Pursuant to 42 U.S.C. § 405(g), the Plaintiff has a right to review of the Commissioner's final decision. The parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

The Plaintiff was born on September 10, 1973 and has an 8th grade education and a GED. (Tr. 36). In the past he has worked as a janitor, stocker, furniture mover, and a material handler. (Tr. 40). The Plaintiff has not worked since he ceased performing cleaning services for his local church in March 2009. (Tr. 38).

The Plaintiff has a history of back problems caused by an on the job injury[1] and gastrointestinal problems (GI) rooted in the conditions of esophagitis[2], gastritis[3], duodenitis, and

---

[1] Mr. Anders was injured moving furniture and has since taken anti-inflammatory drugs regularly to treat his back pain. (Tr. 40, 391, 395).
[2] "Esophagitis is inflammation that may damage tissues of the esophagus, the muscular tube that delivers food from the mouth to the stomach. Esophagitis can cause painful, difficult swallowing, and chest pain. Causes of esophagitis include stomach acids backing up into the esophagus, infection, oral medications and allergies. Treatments for esophagitis depend on the underlying cause and the severity of the tissue damage. If left untreated, esophagitis can damage the lining, interfere with normal function and lead to complications." Esophagitis, *Diseases and Conditions*, Mayo Clinic (Jul. 30, 2015), http://www.mayoclinic.org/diseases-conditions/esophagitis/basics/definition/con-20034313.
[3] "Gastritis is an irritation of the stomach lining. This can be caused by excess use of alcohol, caffeine, tobacco or anti-inflammatory drugs (like ibuprofen, prednisone, aspirin)." (Tr. 391).

Mallory-Weiss tears[4] in the lining of his esophagus. (Tr. 330). His difficulty with GI disorders started in 2004 and have become more frequent over the last several years which has led to multiple trips to the hospital for nausea, vomiting, and throwing up blood (hematemesis). (Tr. 34-54). Mr. Anders also has a history of degenerative changes of the lumbar spine, a depressive disorder, and an anxiety order. (Tr. 20). He underwent surgery on his lumbar spine in 2005 to address compression upon his nerves due to disc protrusions. (Tr. 668-73, 694).

In January 2005, Mr. Anders was admitted to Mission Hospital for recurrent hematemesis. (Tr. 678). The attending physician found severe erosive esophagitis and noted that Mr. Anders was still vomiting upon discharge. (*Id.*) In March 2007, the Plaintiff was admitted to the hospital with a 36-hour history of nausea and vomiting that then turned into hematemesis. (Tr. 668-73; 694). He underwent an endoscopy which revealed severe esophagitis, a Mallory-Weiss tear, and mild gastropathy and duodenopathy. (*Id.*) He was placed on an 8-week proton pump inhibitor ("PPI"); however the doctor suspected he would need to be on long term PPI therapy[5] to avoid further GI problems. (*Id.*) On March 25, 2007, Mr. Anders was released from the hospital with the diagnosis of acute GI hemorrhage. (Tr. 638-40). Mr. Anders returned to the emergency room on May 17, 2007 with persistent nausea, vomiting, and abdominal pain. (Tr. 613). He followed up with Dr. Kim Beavers of Asheville Gastoenterology in July 2007. Dr. Beavers noted that while his recurrent vomiting was probably caused by untreated esophagitis and PPI therapy could be helpful, Mr. Anders stated that he could not afford the medication. (Tr. 303). Dr. Beavers also suggested Mr. Anders stop smoking. (*Id.*) In November 2007, Mr. Anders returned to the emergency room with

---

[4] "A Mallory-Weiss tear occurs in the . . . lower part of the esophagus . . . [and] are most often caused by forceful or long term vomiting or coughing." Mallory-Weiss Tear, *Medical Encyclopedia*, MedlinePlus (Jul. 30, 2015), http://www.nlm.nih.gov/medlineplus/ency/article/000269.htm.
[5] A proton pump inhibitor is a medication which may help treat his esophagitis and recurrent Malory-Weiss tearing. (Tr. 303).

upper gastrointestinal bleeding and uncontrollable vomiting. (Tr. 395). Dr. Newcomer noted that the patient reported "breakthrough episodes (of vomiting) 3 times a week." (Tr. 400).

Mr. Anders returned to the hospital with similar symptoms in January, August, and November of 2008. (Tr. 376, 443, 450). The treating physicians agreed that his symptoms are most likely caused by untreated esophagitis. However, Mr. Anders has continued to report that he cannot afford the necessary medication. (Tr. 443, 400). In January 2009, Mr. Anders returned to the emergency room because of gastritis and esophagitis and was prescribed anti-inflammatory drugs to cope with the pain. (Tr. 508). He was once again admitted to the hospital in early February 2009 for persistent nausea and vomiting with hematemesis throughout the night. (Tr. 519, 524). On this visit, Mr. Anders "vomited continuously in the emergency room as well." (Tr. 513). The doctor diagnosed him with hematemesis and a Mallory-Weiss tear. (Tr. 515). Once again, Mr. Anders was prescribed anti-inflammatories to treat the pain. (Tr. 530). In late February 2009, Mr. Anders returned to the emergency once again with similar symptoms and diagnosis. (Tr. 480).

The plaintiff was hospitalized for his GI problems at least four more times between 2010 and 2012. (Tr. 347-48, 732-736, 754-59, 770-72). Mr. Anders was also being treated by his primary doctor during this time period who noted that he continued to have nausea a few times a week and prescribed Oxycodone for his pain. (Tr. 339-340, 477).

## II.     LEGAL STANDARD

### A. Standard of Review

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*,

907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Harrell v. Bowan*, 862 F.2d 471, 475 (5th Cir. 1988) ("Substantial evidence must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices."). District courts do not review a final decision of the Secretary *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456.

The issue before this Court, therefore, is not whether Plaintiff is disabled, but whether the ALJ's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act between his alleged onset date of March 1, 2009 and the date of the ALJ's decision.[6]

---

[6] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

5

Plaintiff has the burden of proving he was disabled within the meaning of the Act in order to be entitled to benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering her RFC and vocational factors, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If he is able to carry this burden through the fourth step, the burden shifts to the Commissioner in the fifth step to show that other work is available in the national economy which the claimant could perform. *Id.*

In the instant case, the ALJ determined at step one that the Plaintiff has not been engaged in substantial gainful activity since his alleged onset date of March 1, 2009. (Tr. 20). At step two, he determined that the Plaintiff had the severe impairments of degenerative changes of the lumbar

spine, a depressive disorder, and an anxiety disorder. (*Id.*) The ALJ found, at step three, that the Plaintiff did not meet any of the listings. (Tr. 21). At step four, the ALJ found that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with a sit/stand option that was limited to simple, routine, repetitive tasks. (Tr. 22). The ALJ also found that the Plaintiff was no longer capable of performing his past relevant work. (Tr. 26-27). However, at step five, the ALJ concluded that the Plaintiff could still perform the jobs of inspector, bench worker, and packer and was therefore not disabled. (*Id.*).

On appeal to this Court, the Plaintiff appears to present the following assignments of error: (1) the ALJ erred by finding that the Plaintiff's significant gastrointestinal ("GI") disorders did not constitute a severe impairment; and (2) the ALJ improperly evaluated the medical opinion evidence.[7] (Doc. No. 10). Turning to the arguments in this case, the Court has reviewed the pleadings and briefs and addresses the Plaintiff's assignments of error below.

**A. The ALJ's Failure to Conduct a Functional Analysis Addressing the Plaintiff's GI Problems Requires Remand**

Mr. Anders argues that, especially in light of *Mascio*, the ALJ failed to conduct a proper functional analysis of his RFC. (Doc. No. 16). The Court finds that the ALJ did not conduct a sufficient functional analysis of the Plaintiff's RFC and remand is necessary for a complete explanation of the ALJ's reasoning in determining the Plaintiff's RFC.

The ALJ is solely responsible for determining the RFC of the claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Completing this

---

[7] The plaintiff also argues in supplemental briefing that the ALJ's error has been highlighted by the recent *Mascio* decision and its emphasis on the regulation's requirement that the ALJ perform a function-by-function analysis and "narrative discussion describing how evidence supports each conclusion." *See* S.S.R. 96-8p, (Doc. No. 16 at 1-2).

assessment requires that the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *See* S.S.R. 96-8p. The ALJ is required to consider both severe and non-severe impairments in the RFC assessment.[8] (*Id.*) "The RFC assessment must include a narrative discussion describing how the evidence supports the medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work related activity the individual can perform based on the evidence available in the case record." S.S.R. 96-8p at *7. Furthermore, the Fourth Circuit in *Mascio* recently reiterated that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions despite contradictory evidence in the record or where other inadequacies in the ALJ's analysis frustrate meaningful review."[9]

In the present case, the ALJ has failed to sufficiently explain how Mr. Anders' GI problems factored into his RFC assessment making it impossible for this Court to conclude whether his findings are supported by substantial evidence. At step two of the evaluation, the ALJ concluded that Mr. Anders' disorders did not constitute a severe impairment.[10] Regardless of his finding that

---

[8] "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of the claim." S.S.R. 96-8p at *5.

[9] *See Mascio*, 780 F.3d at 635 ("If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [his] ability to work . . . To make this assessment the ALJ must 'consider all of [the claimant's medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two.") (quoting 20 C.F.R. § 416.920(a)(1-2)(2014)).

[10] The Plaintiff argues that his GI disorders do constitute a severe impairment; however, the Court makes no findings in regard to that issue since the case requires remand on other grounds. (*See* Doc. No. 10).

Mr. Anders' GI problems constituted a non-severe impairment, the ALJ was required to address the Plaintiff's GI problems when assessing his RFC. *See* S.S.R. 96-8p at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *see also* 20 C.F.R. § 416.945 ("If you have more than one impairment[,] [w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); *Mascio*, 780 F.3d at 635. At the hearing with ALJ Davenport, Mr. Anders testified graphically about how his GI disorders affect his daily life when he is having an episode.[11] Moreover, the record clearly indicates Mr. Anders has been hospitalized fairly frequently due to his GI disorders and has documentation from several physicians to demonstrate the significance of his problem. Despite Mr. Anders' testimony and medical records, the Plaintiff's GI problems and any consideration of their erosion of the Plaintiff's RFC were erroneously absent from the ALJ's RFC determination and they must be addressed on remand. *See e.g.*, *Sawyer v. Astrue*, 775 F. Supp. 2d 829 (2011) (remanding when the ALJ failed to account for the claimant's use of a cane or impaired sensation and coordination in her hands when calculating RFC). In assessing Mr. Anders' RFC, the ALJ briefly acknowledged that "the claimant advised that he has stomach problems that include a ruptured esophagus." (Tr. 23). The analysis that follows consists of no discussion of Mr. Anders' GI symptoms and how they affect his RFC. Furthermore, the regulations state[12] and *Mascio* has reiterated that the ALJ's narrative

---

[11] "Once it started I wouldn't be able to do any sustainable work. As far as even if the medication took effect it would still take me several hours to get back to normal . . . [the flair up begins with] extreme, extreme retching at first, and then once I, without any other word to describe it, once I empty my stomach then it's almost a dry heave to the point where I am retching and that's when the esophagitis comes into play from all the retching. It ruptures the esophagus and that's when the blood in the stomach starts." (Tr. 49).

[12] "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular continuous basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." S.S.R. 96-8p at *7.

assessment of RFC must include an analysis of the claimant's ability to perform work on a sustained basis. ALJ Davenport's opinion contains no such analysis. Since the ALJ failed to express how the Plaintiff's GI disorders affected his RFC by conducting a sufficient RFC assessment, the Court cannot ascertain whether the decision is supported by substantial evidence and must remand Mr. Anders' case for further proceedings.

## V.  CONCLUSION

The Court recognizes that it did not address all assignments of error as set out by the Plaintiff. Given that remand is necessary in this case on other grounds, the Court does not find it necessary to address those issues at this time. The ALJ, however, may consider these additional assignments of error on remand.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 10) is GRANTED, Defendant's Motion for Summary Judgment (Doc. No. 13) is DENIED, and the case is REMANDED to the Social Security Administration for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Signed: August 6, 2015

Graham C. Mullen
United States District Judge